364 A.2d 442

Patrick P. KENNEDY, Jr., a minor by Louise Kennedy and Patrick P. Kennedy, parents and natural guardians of Patrick P. Kennedy, Jr., and Louise Kennedy and Patrick P. Kennedy, in their own right,

v.

BOARD OF SUPERVISORS OF WARMINSTER TOWNSHIP and Warminster Township, Appellants.

Superior Court of Pennsylvania.

Sept. 27, 1976.

2. 12 U.S.C.A. § 1752a.

James Lewis Griffith, Philadelphia, Henry F. Huhn, Cornwells Heights, for appellants.

Pratt, Clark, Gathright & Price, Ward F. Clark, Doylestown, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order opening a judgment entered upon appellees' failure to file a complaint within twenty days after service of a rule to file a complaint or suffer judgment of non pros.[1]

On July 17, 1967, the minor appellee fell from the steps of a tree house in a park allegedly controlled by appellants, and sustained serious injuries. The alleged cause of the fall was a defective stair. Sometime after the accident, appellee parents retained counsel who in May of 1969, two months before the statute of limitations would run, referred the case to Daniel DiGiacomo, a Philadelphia attorney. DiGiacomo entered into negotiations with an adjuster from appellants' insurance company. The adjuster allegedly told DiGiacomo that he would prefer to settle the case rather than go to trial, and asked DiGiacomo to send him the medical bills.

Because the accident had occurred in Bucks County and he was unfamiliar with local court rules and practices, DiGiacomo asked Edward Casey, a Bucks County

---

1. Appellee erroneously argues that this appeal is interlocutory. This court has jurisdiction under the Act of May 20, 1891, P.L. 101, § 1, as amended, 12 P.S. § 1100, and under the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, Art. III, § 302, 17 P.S. § 211.302.

attorney, to serve as local counsel. They agreed that DiGiacomo would conduct settlement negotiations, prepare all pleadings, and try the case. Casey was simply to file the papers, introduce DiGiacomo to the court, and advise him of local court procedures. Casey never met appellees.

On July 15, 1969, two days before the statute of limitations ran, Casey filed a summons in trespass, which was served on appellants seven days later. After the filing of the summons, DiGiacomo had one or two more telephone conversations with the adjuster, but never sent him the medical reports. DiGiacomo said in his deposition that he was having difficulty obtaining the reports, but he also said that he stopped trying in August or September, 1969.

On September 23, 1970, appellants' attorney sent a letter to the Bucks County Prothonotary enclosing his entry of appearance for appellants and a rule upon appellees to file a complaint within 20 days or suffer a judgment of non pros. A copy of the letter was sent to Casey, the only attorney of record for appellees. The prothonotary filed the entry of appearance and rule on September 28, 1970. Forty-six days later, on November 13, 1970, no complaint having been filed, a judgment of non pros was entered against appellees.[2] The affidavit of service on Casey was filed the same day.

Although Casey had a copy of the September 23 letter in his file, he said in his deposition that he did not remember whether he called DiGiacomo after receiving it or whether he just assumed that DiGiacomo also received a copy. (DiGiacomo did not receive a copy since he was

---

2. This was in compliance with Pa.R.C.P. 1037(a):
   If an action is not commenced by a complaint, the prothonotary, upon praecipe of the defendant, shall enter a rule upon the plaintiff to file a complaint. If a complaint is not filed within twenty (20) days after service of the rule, the prothonotary, upon praecipe of the defendant, shall enter a judgment of non pros.

not listed as counsel of record.)  Casey did not recall receiving two other letters from appellants' counsel on September 30 and October 14 reminding him of the failure to file the complaint.  He also said that he did not check the docket more than once during the pendency of the case, and that he did not know that the judgment of non pros had been entered.[3]  DiGiacomo never called or wrote Casey between July 15, 1969, when the summons had been filed, and July 8, 1971.

On July 8, 1971, nearly two years after the summons was filed and nearly four years after the accident, DiGiacomo attempted to file a complaint.  When he did he learned for the first time that months earlier a judgment of non pros had been entered.  Eight days later he filed a petition to open the judgment of non pros,[4]  and on July 29, 1971, appellants filed an answer to the petition.

No further action was taken on the petition to open until June 28, 1972, when appellants filed a petition for a rule to show cause why appellees should not proceed in accordance with Pa.R.C.P. 209.[5]  Casey immediately ordered the petition to open onto the argument list without requesting depositions.  The case was thereafter twice listed and twice continued.  Finally, on May 21, 1973,

---

**3.**  Casey's memory was not aided by his file since he did not make a file until 1971.  It is possible that he did not receive the letters since he changed his personal residence at least once and had offices in at least three different locations during the pendency of the case.  He never informed appellants or the prothonotary of his changes of address.

**4.**  The petition was filed under Casey's signature since DiGiacomo has never entered an appearance.

**5.**  Pa.R.C.P. 209 provides in pertinent part:
If, after the filing and service of the answer, the moving party does not within fifteen days:
    (a) Proceed by rule or by agreement of counsel to take depositions on disputed issues of fact; or
    (b) Order the cause for argument on petition and answer . . . . ; the respondent may take a rule as of course on the moving party to show cause why he should not proceed as above.  . . .

present counsel entered his appearance for appellees and the petition to open was argued. On May 25, the lower court reserved decision on the case and ordered the parties to proceed with depositions within 30 days and then relist the case for argument.

DiGiacomo's deposition was taken on July 24, 1973, and filed on February 20, 1974. Casey's deposition was taken on August 29, 1973, and filed on December 28, 1973. On September 30, 1974, one year and four months after the lower court's order, appellees ordered the petition onto the argument list. On October 31, 1974, appellants moved to strike the petition to open on the ground that appellees had filed no brief. Appellees answered on November 6, and on November 24, argument was had. The lower court opened the judgment of non pros on December 26, 1974.

■ It is established that:

A request to open a judgment of non pros is by way of grace and not of right. Its grant or refusal is peculiarly a matter for the lower court's discretion. An appellate court may not reverse the lower court's ruling unless an abuse of discretion is clearly evident. *Goldstein v. Graduate Hospital*, 441 Pa. 179, 182, 272 A.2d 472, 474 (1971), quoting from *Mazer v. Sargent Electric Co.*, 407 Pa. 169, 171, 180 A.2d 63, 64 (1962).

Appellants argue that here an abuse of discretion is evident. We agree and therefore reverse.

In the first place, the opinion of the lower court states that appellants did not comply with Bucks County Rule of Civil Procedure *927(a), which provides:

(a) No judgment of default shall be entered in any case, action or proceeding whatsoever until the expiration of seventy-two hours from the service of written notice of intention so to proceed upon the attorney of record for the default party; provided, that this rule

shall have no application if there be no appearance entered for such defaulting party.

By its own terms, however, this rule applies to default judgments, not to judgments of non pros. The applicable rule is Pa.R.C.P. 1037, which appellants followed.[6]

In the second place, the opinion of the lower court states that the judgment should be opened because the reason for the delay in filing the complaint was the inattention of counsel, and because appellants have shown no prejudice from that delay.[7]

The requirements that must be met before a judgment of non pros may be opened are as follows: (1) the petition to open should be timely filed; (2) the reason for the default—here the failure to file a complaint—must be reasonably explained, or excused; and (3) facts constituting grounds for a cause of action should be alleged. *Goldstein v. Graduate Hospital, supra,* 441 Pa. at 182, 272 A.2d at 473, 474; *Thorn v. Clearfield Bor-*

6. *See* footnote 2, *supra.* Since Rule * 927 clearly does not apply, it is unnecessary to consider appellants' argument that it could not in any event supersede Pa.R.C.P. 1037.

7. I have suggested in dissent that "the decision whether to let [a judgment of non pros] stand should be made according to general principles of equity," going on to say that therefore, "it is always necessary to ask what prejudice the other party has suffered." *Lewis v. Reid,* 244 Pa.Super. ——, ——, 366 A.2d 923, 929 (Filed Apr. 22, 1976). Accordingly, in *Lewis* I would have remanded for further proceedings at which it would have been determined whether the defendants had suffered prejudice. The majority of the court, however, did not accept my reasoning. *See* opinion for the court by Judge Cercone and concurring opinion by Judge Hoffman. Here, I would not remand, for I am satisfied from the record that there was prejudice. The complaint alleges (para. 11) that "approximately 35 feet from the ground, one of the defective steps [of the tree house] gave way causing minor Plaintiff . . . to fall. . . ." It may be assumed that the steps no longer exist, so that a demonstration of their condition by inspection is no longer possible. This alone is enough to show prejudice, without consideration of the probability of further prejudice because of the indubitably increased difficulty of now finding witnesses who could describe the tree house and the extent of appellants' knowledge of its condition.

*ough,* 420 Pa. 584, 586, 218 A.2d 298, 299 (1966); *White v. Alston,* 231 Pa.Super. 438, 440, 331 A.2d 765, 766 (1974). Of these requirements only the third is met: the complaint that appellees' attorney attempted to file does allege facts constituting grounds for a cause of action of negligence against appellants. The first and second requirements, however, are not met.

█ With respect to the requirement that the petition to open be timely filed: The petition was filed eight months after the entry of the judgment of non pros. Although DiGiacomo stated that he did not know of the non pros, he should have known, and would have, if he had not let two years elapse without communicating with local counsel, and if he had periodically checked the status of the case.[8] Furthermore, no action was taken on the petition for nearly a year, when appellants filed the rule to show cause why appellees should not proceed in accordance with Rule 209. Almost another year (11 months) passed before the case was argued the first time, and the final argument was nearly a year and a half after that. Thus, three years passed from the entry of the judgment of non pros to the final argument on the petition to open.

With respect to the requirement that the original default in not filing the complaint be reasonably explained or excused: Appellees' attorney waited four years from the date of the accident to file the complaint. Although some negotiations with the insurance company took place during the first two years, they ceased soon after the filing of the summons because DiGiacomo did not supply the adjuster with the medical reports. DiGiacomo in fact never obtained complete medical reports, and shortly after the summons was filed he stopped trying to get

**8.** DiGiacomo stated in his deposition that he had no established system of review of cases in his office, except to check the date of the expiration of the statute of limitations.

them. For the next two years the case simply lay dormant.

There is no reasonable explanation or excuse for this delay, as the lower court implicitly recognized by its citation to cases involving the "neglect" or "inattention" of counsel.

Although an attorney's failure to file a complaint has been excused where he was ill, *Thorn v. Clearfield Borough, supra; McFadden v. Pennzoil,* 326 Pa. 277, 191 A. 584 (1937); *Holliday v. Foster,* 221 Pa.Super. 388, 292 A.2d 438 (1972), it will not be excused where there was no reasonable explanation or excuse. *Goldstein v. Graduate Hospital, supra; Hale v. Uhl,* 293 Pa. 454, 143 A. 115 (1928); *Johnson v. Mulhall,* 230 Pa.Super. 183, 326 A.2d 439 (1974); *Boyles v. Sullivan,* 230 Pa.Super. 453, 326 A.2d 440 (1974).

This case is much like *Goldstein v. Graduate Hospital, supra.* There the judgment of non pros was entered even before the statute of limitations had run. As here, the defaulting attorney had ignored a rule to file a complaint within 20 days filed in accordance with Rule 1037. Since no reasonable explanation was offered, the Supreme Court held that the lower court had abused its discretion in opening the judgment of non pros and reversed. The Court said that although "counsel may be involved in other matters, the existence of these obligations provides no excuse for opening the judgment *even though the client may be severely prejudiced. Walters v. Harleysville Mutual Cas. Co.,* 417 Pa. 438, 207 A.2d 852 (1965)." *Goldstein v. Graduate Hospital, supra,* 441 Pa. at 182–83, 272 A.2d at 474. (Emphasis in original.)

The order of the lower court is reversed.